UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

| | |
|---|---|
| STEVEN BRADLEY, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>GANNETT CO, INC., )<br>)<br>Defendant. )<br>_____ ) | Case No. 1:23-cv-01100-RDA-WEF |

### DECLARATION OF MICHELLE FERGUSON

Michelle Ferguson, pursuant to 28 U.S.C. Section 1746, declares under penalty of perjury:

1.  I am the Labor Relations Director for Gannett Co., Inc. ("Gannett"). I have held that position since July 2020. From 2013 to 2020, I was a Regional Human Resource Director for Gannett and one of its predecessor companies, GateHouse Media Inc.

2.  I submit this Declaration in support of Gannett's Motion to Dismiss Complaint and to Dismiss/Strike Class Allegations.

3.  In my capacity as Labor Relations Director for Gannett, I am familiar with various personnel records made and kept in the ordinary course of business by Gannett's subsidiary companies. I review and maintain these personnel records for purposes of collective bargaining and labor relations, as well as other employee-related matters, including reductions in force, disciplinary proceedings, employee terminations, grievance/arbitration proceedings, and EEOC or NLRB proceedings.

4. Attached as Exhibit A is a Separation Agreement signed by Plaintiff Steven Bradley on May 1, 2020 following a reduction in force affecting forty-nine (49) employees in Gannett's Atlantic operations. This agreement is in a form used by Gannett local newspapers at the time. Such agreements once signed are kept in personnel records in the ordinary course of business. This particular Separation Agreement is kept in personnel records pertaining to Steven Bradley's employment by the Rochester Democrat & Chronicle.

5. Attached as Exhibit B is an Employee Data Form completed and signed by Plaintiff Barbara Augsdorfer. This form was used by Gannett predecessor GateHouse Media and was kept in personnel records in the ordinary course of business. Included on this form is a voluntary self-identification section. Ms. Augsdorfer self-identified as "Hispanic or Latino" on this form. This particular Employee Data Form is kept in personnel records pertaining to Barbara Augsdorfer's employment with the Savannah Morning News.

6. I declare the foregoing to be true and correct under penalty of perjury.

DATED: November 22, 2023

*Michelle Ferguson* (signature)
Michelle Ferguson

# **EXHIBIT A**

**GANNETT**

**April 24, 2020**

Steven Bradley
632 Beaver Crk
Macedon, New York 14502

### Separation Agreement and Release of Claims

Dear Steven:

This letter confirms that your employment with Gannett Co., Inc. together with its subsidiaries, merged entities and affiliates, and its and their respective predecessor and successor entities (collectively "Gannett" or "the Company") is being terminated. This Separation Agreement and Release of Claims ("Separation Agreement" or "Agreement"), upon your signature after your Separation Date, will constitute the entire understanding and complete agreement between you and the Company regarding the terms of your separation from employment.

Your employment with the Company will terminate at the close of business on 5/1/2020. Your last day of employment with the Company is referred to in this letter as your "Separation Date". Through your Separation Date, you will continue to perform your job and complete any assigned or requested transition tasks.

If you resign for any reason or are terminated for cause prior to the Separation Date, you will be ineligible to receive the Severance Benefits outlined below.

If you become eligible for Short Term Disability prior to your Separation Date, your disability benefits would continue as long as you remain eligible under the plan and your Severance Pay and Benefits would be unaffected.

If following your Short Term Disability, you become eligible for Long Term Disability, you would not be eligible for the Severance Pay and Benefits described below.

In the event you are reemployed by the Company you would forfeit any unpaid installments as of your rehire date.

Whether you sign this Agreement or not, on the next regularly scheduled pay date following your Separation Date, or sooner if local law requires, you will

Page 2 of 7

receive a check for all unpaid wages and accrued, unused PTO due through your Separation Date, less applicable payroll deductions.

In exchange for your signing this Separation Agreement on or after the Separation Date within the time frame set forth below (and it becoming effective and irrevocable), the Company will provide you with the following severance package:

1. **Severance Pay and Benefits**.

    a. You will receive $33,324.88, the equivalent of 21 weeks of your base salary, less applicable taxes and withholdings. This amount will be payable in installments. Each installment will be equal to, on a gross basis, the lesser of (i) the gross amount of your regular paycheck or (ii) the remaining amount of the Severance Benefit owed to you until the Severance Benefit has been paid in full. The installments will be paid in accordance with the Company's prevailing payroll schedule commencing on the first practicable pay date after the statutory revocation period has expired.

    b. You will receive a supplemental transitional severance amount of $3,000.00, less legally-required deductions, payable in a single payment on the first practicable pay date after the statutory revocation period has expired.

    c. You will be provided with a 1 month(s) outplacement service to assist you in securing employment following your separation from employment with the Company. Additional information on this benefit will be in your Separation Package.

2. **Release of Claims**.
    You agree to a full and complete Release of Claims. The details of the Release of Claims are explained below.

    a. The Release of Claims means that you agree to give up forever any and all legal claims, or causes of actions, you may have, or think you have, against Gannett and any of its directors, officers and employees (collectively "Releasees"). This includes all legal claims that arose at any time before or at the time you sign this Agreement; it also includes those legal claims of which you know and are aware, as well as any legal claims of which you may not know or be aware.

    b. Among the claims covered by the Release of Claims are those under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the Americans With Disabilities Act, The

Family and Medical Leave Act of 1993, the Age Discrimination in Employment Act of 1967, as amended by the Older Workers Benefit Protection Act of 1990, the National Labor Relations Act, the Worker Adjustment Retraining and Notification Act, the Sarbanes-Oxley Act, and the Dodd Frank Wall Street Reform and Consumer Protection Act. The Release of Claims also covers claims under other federal, state and local employment laws, as well as under common law theories.

c. If you work or reside in California, you acknowledge that you have read and understand Section 1542 of the California Civil Code, which states: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." You give up all rights and benefits under that section. If you work or reside in Montana or South Dakota, you give up those same rights and benefits under Montana Code Annotated, Section 28-1-1602 and South Dakota Laws § 20-7-11, respectively. If you work or reside in New Jersey, you waive all claims under New Jersey's Conscientious Employee Protection Act. If you work or reside in Massachusetts, you waive all claims and rights under the Massachusetts Payment of Wages Law and the Massachusetts Fair Employment Practices Act.

d. By referring to specific laws, this Agreement does not limit the Release of Claims to just those laws. This Release of Claims covers all legal claims for money, damages, attorneys' fees, or any other relief that relate to or are in any way connected with your employment with Gannett or another Releasee, as well as your separation from that employment, even if they are not specifically referred to in this Agreement. The only legal claims that are not covered by this Release of Claims are (i) claims for workers' compensation and claims for unemployment compensation, (ii) claims that arise out of some action that takes place after you sign this Agreement, and (iii) claims that Gannett has violated this Agreement.

3. **Additional Exclusions**. Neither the Release of Claims above nor anything else in this Agreement limits your rights to file a charge with any administrative agency (such as the U.S. Equal Employment Opportunity Commission or a state fair employment practices

agency), provide testimony or other information to an agency, or otherwise participate in an agency investigation or other administrative proceeding. Nor does anything in this Agreement limit your right to testify regarding alleged criminal conduct or alleged sexual harassment, either (i) in court under subpoena or court order, or (ii) in a legislative proceeding if called to testify by the legislature. However, you give up all rights to any money or other individual relief based on any agency or judicial decision, including class or collective action rulings, except that you may receive money properly awarded by the U.S. Securities and Exchange Commission as a reward for providing information to that agency.

4. **Confidentiality of Agreement**. Except as to disclosures required by law, or otherwise made by the Company, you agree not to disclose the terms of this Letter Agreement to anyone other than the attorneys involved in this matter, your accountants or tax preparers or your immediate family; and you shall forthwith instruct such attorneys, accountants or tax preparers and your immediate family not to disclose the terms and conditions of this Letter Agreement to anyone. You acknowledge and agree that any disclosure of information contrary to the terms of this paragraph would cause the Company injury and damage. Any material violation of this provision shall, in addition to any other rights and remedies to which the Company might be entitled, disqualify you from receiving any further payments or benefits hereunder. Nothing herein shall prevent, restrict or limit you from filing any complaint or claim with or request an investigation by the SEC or the EEOC or any other state or federal agency.

5. **Non-Solicitation**.  For a period of six (6) months following your Separation Date, you agree that you will not: (i) solicit or induce, or cause to be solicited or induced, any employee of Gannett or any other Releasee to terminate his/her employment or any independent contractor with Gannett or any other Releasee to terminate his/her contractual relationship; or (ii) approach or solicit, or cause to be approached or solicited, any person, corporation or entity who is then a client or customer of Gannett or any other Releasee, or who was a client or customer in the preceding one (1) year, to purchase or otherwise acquire any products or services similar to or competitive with those offered by Gannett. For purposes of those employees who primarily resided and worked in California at their separation, the prohibited solicitations apply only to solicitations made through the use of trade secrets or confidential information.

6. **Non-Disparagement.** You will not make any statements, oral or written, or cause or allow to be published in your name, or under any other name, any statements, interviews, articles, editorials or commentary (oral or written) including blog posts and posts in any social media space, that is critical or disparaging of Gannett, or any other Releasee.

7. **Confidential Information.** You agree that during the course of your employment, you learned of Confidential Information such as, but not limited to, financial and legal information, marketing strategies, pending and future projects and proposals, research and development, technological data, all proprietary and trade secret information, actual and potential customer and vendor lists, documentation, software, know-how and information relating to the past, present or future business of Gannett or any plans relating to the foregoing and the confidential and proprietary information of third parties that do business with Gannett. You agree to treat Confidential Information on a confidential basis and shall not disclose any of it to others without the prior written consent of Gannett or use Confidential Information for any purpose other than for the performance of services for Gannett. Notwithstanding any provisions of this Agreement or Gannett policy regarding the disclosure of trade secrets or confidential information, pursuant to the Defend Trade Secrets Act of 2016, you cannot be held criminally or civilly liable under any federal or state trade secret law for disclosure of a trade secret if that disclosure is made (i) in confidence to a federal, state or local government official, either directly or indirectly, or to any attorney, and for the sole purpose of reporting or investigating a suspected violation of law, or (ii) in a complaint or other document filed in a lawsuit or similar proceeding, provided that filing is made under seal.

8. **Return of Company Property.** You agree that all personal property, including, without limitation, all books, manuals, memoranda, policy statements, correspondence, agendas, interoffice communications, forecasts, analyses, working papers, financial information, data compilations, records, reports, notes, computer disks, flow charts, computer documents and computer software, contracts, lists, and equipment furnished to or prepared by you in the course of your employment, belong exclusively to Gannett and shall be promptly returned to Gannett along with all copies of Confidential Information. Any and all inventions, improvements, discoveries, processes, techniques or formulas you developed or discovered during your employment with Gannett which relate in any way to Gannett business are the property of Gannett and shall be fully disclosed to Gannett.

9. **Cooperation.** You agree to fully cooperate and assist Gannett in the defense of any claims, charges, arbitrations, grievances, or lawsuits brought against Gannett or any other Releasee as to matters of which you have personal knowledge necessary, in Gannett's judgment, for the defense of the action. "Cooperation" does not mean you must provide information favorable to Gannett. Rather, it means you must testify truthfully if called to testify, and upon Gannett's request must provide documents or other information you possess or control. You will be reimbursed for reasonable expenses that you incur due to your cooperation and assistance in Gannett's defense of any action.

10. **Contingent Offer.** This offer is contingent upon the expectation that you will treat this offer and our discussions as confidential and that you will not before signing this Agreement engage in any conduct that would be in violation of the Agreement if accepted by you. Should that not be the case, this offer will be immediately withdrawn and not available to you or automatically deemed void if the violation comes to our attention after you have purported to accept it.

11. **Entire Agreement.** You agree that this letter contains all the details of the Agreement between yourself and Gannett. Nothing has been promised to you, either in some other written document or orally, by Gannett that is not included in this letter.

12. **Time to Consider, Consult Counsel, and Revoke (If you are age 40 or older on your Separation Date).** Please review this offer carefully. We advise you to talk with an attorney before signing this Agreement. You may take up to forty-five (45) days to consider this Agreement before signing it. If you accept all the terms herein, you must sign this Agreement and return it to People Operations, PeopleSupport@gannett.com. You also received along with this Agreement a list of the job titles and ages of all employees selected and not selected for termination under the group termination program (Attachment A).

Should you accept all the terms herein by signing this Agreement, you may nevertheless revoke this Agreement within seven (7) days after signing it (15 days if you work or reside in Minnesota). Notice of your revocation shall be made in writing to People Operations, PeopleSupport@gannett.com. within the allowed seven (7) day period (15-day period if you work or reside in Minnesota).

If you wish to accept the terms of this Agreement, please do so by signing the original of this letter in the space provided below. The Agreement will become effective, and its terms will be carried out beginning on the day following the seven (7) day revocation period (15-day period if you work or reside in Minnesota).

13. **Time to Consider (If you are under age 40 on your Separation Date).** You have until seven (7) days after your Separation Date to sign and return the Separation Agreement. If you accept all the terms herein, you must sign this Agreement and return it to People Operations, PeopleSupport@gannett.com.

14. **Final Acknowledgements**. By signing this Agreement, you acknowledge that you have carefully read this Agreement and understand its terms. You also acknowledge that you have had a reasonable opportunity to think about your decision and to talk with an attorney or advisor of your choice, that you have voluntarily signed this Agreement, and that you fully understand the effect of signing this Agreement.

Very truly yours,

*S.Y. Howland*

Samantha Howland
Gannett Co., Inc.
Chief People Officer

I elect to accept all the terms of this Agreement.

_____
Steven Bradley 108137

5-1-2020
_____
Date

Disclosure List

Gannett Atlantic

Reduction in Force

Pursuant to the Older Workers Benefit Protection Act, the Company is providing the following list by job title and age for employees in the "decisional unit" who are and are not eligible for separation pay and benefits under this group separation program.

1. The decisional unit in which you were employed is the Atlantic.

2. All employees in the Atlantic who were selected for the April 24, 2020 reduction in force are eligible for the program. The factors that were used to determine which employees were selected for the reduction in force were position, job functions and performance level.

3. Separation pay and benefits under the program are based on job level and years of service.

| Job Title | Age | Not Selected | Selected |
|---|---|---|---|
| Reporter II (PT) | 54 | 0 | 1 |
| Reporter II | 36 | 1 | 0 |
| Reporter II | 54 | 1 | 0 |
| Reporter II/Jackson | 36 | 1 | 0 |
| Reporter | 54 | 1 | 0 |
| Director, Video | 50 | 0 | 1 |
| Columnist III | 72 | 0 | 1 |
| Editorial Assistant I (PT) | 84 | 0 | 1 |
| Editorial Assistant II | 45 | 0 | 1 |
| Editorial Assistant II | 55 | 0 | 1 |
| Editorial Assistant II | 41 | 1 | 0 |
| Editorial Assistant II | 45 | 1 | 0 |
| Reporter (PT) III | 39 | 0 | 1 |
| Reporter III (PT) | 74 | 0 | 1 |
| Reporter III | 44 | 1 | 0 |
| Reporter III | 46 | 1 | 0 |

| | | | |
|---|---|---|---|
| Reporter III | 28 | 1 | 0 |
| Reporter III | 61 | 1 | 0 |
| Reporter III | 25 | 1 | 0 |
| Reporter III | 45 | 1 | 0 |
| Reporter III | 60 | 1 | 0 |
| Reporter III | 44 | 1 | 0 |
| Reporter III | 65 | 1 | 0 |
| Reporter III | 57 | 1 | 0 |
| Reporter III | 56 | 1 | 0 |
| Reporter III | 68 | 1 | 0 |
| Reporter III | 66 | 1 | 0 |
| Columnist IV | 61 | 0 | 1 |
| Photographer/Videographer III | 70 | 0 | 1 |
| Photographer/Videographer III | 62 | 1 | 0 |
| Photographer/Videographer III | 45 | 1 | 0 |
| Photographer/Videographer III | 42 | 1 | 0 |
| Photographer/Videographer III | 47 | 1 | 0 |
| Photographer/Videographer III | 45 | 1 | 0 |
| Columnist I | 33 | 0 | 1 |
| Columnist I | 28 | 1 | 0 |
| Columnist I | 23 | 1 | 0 |
| Content Strategist | 52 | 0 | 1 |
| Content Strategist | 55 | 1 | 0 |
| Columnist/Sports | 57 | 0 | 1 |
| Intern | 29 | 0 | 1 |
| Sports Outfielder (PT) | 23 | 0 | 1 |
| Digital Producer III | 40 | 1 | 0 |

| | | | |
|---|---|---|---|
| Photographer/Videographer II | 42 | 0 | 1 |
| Photographer/Videographer II | 39 | 1 | 0 |
| Photographer/Videographer II | 55 | 1 | 0 |
| Content Coach | 39 | 0 | 1 |
| Reporter I | 51 | 0 | 1 |
| Reporter I | 34 | 1 | 0 |
| Reporter I | 30 | 1 | 0 |
| Reporter I | 27 | 1 | 0 |
| Reporter I | 31 | 1 | 0 |
| Reporter II | 32 | 0 | 1 |
| Reporter II | 48 | 1 | 0 |
| Reporter II | 34 | 1 | 0 |
| Reporter II | 34 | 1 | 0 |
| Sr. Content Coach | 62 | 0 | 1 |
| Sr. Consumer Experience Editor | 38 | 0 | 1 |
| Content Producer | 56 | 0 | 1 |
| Sports Writer | 64 | 0 | 1 |
| Sports Writer (PT) | 19 | 0 | 1 |
| Sports Writer (PT) | 22 | 0 | 1 |
| Sports Writer (PT) | 45 | 1 | 0 |
| Sports Writer | 40 | 1 | 0 |
| Sports Writer | 62 | 1 | 0 |
| Executive Editor | 53 | 0 | 1 |
| Deputy Metro Editor | 57 | 0 | 1 |
| Editorial Assistant | 64 | 0 | 1 |
| Editorial Assistant | 59 | 1 | 0 |
| Editorial Assistant | 54 | 1 | 0 |

| | | | |
|---|---|---|---|
| Assistant Editor | 40 | 0 | 1 |
| Sports Reporter | 26 | 0 | 1 |
| Sports Reporter (PT) | 26 | 0 | 1 |
| Reporter | 48 | 0 | 1 |
| Reporter | 35 | 1 | 0 |
| Reporter | 24 | 1 | 0 |
| Reporter | 52 | 1 | 0 |
| Editor | 61 | 0 | 1 |
| Managing Editor | 65 | 0 | 1 |
| Editor | 58 | 0 | 1 |
| Managing Editor | 53 | 0 | 1 |
| Reporter (PT) | 83 | 0 | 1 |
| Reporter | 74 | 0 | 1 |
| Reporter | 60 | 1 | 0 |
| Reporter | 52 | 1 | 0 |
| Reporter | 51 | 1 | 0 |
| Reporter | 38 | 1 | 0 |
| Reporter | 23 | 1 | 0 |
| Reporter | 30 | 1 | 0 |
| Coordinator | 46 | 0 | 1 |
| Editor | 64 | 0 | 1 |
| Managing Editor | 43 | 0 | 1 |
| Sports Reporter | 29 | 0 | 1 |
| Sports Reporter | 47 | 1 | 0 |
| Managing Editor | 52 | 0 | 1 |
| Sports Editor | 57 | 0 | 1 |
| Reporter | 30 | 0 | 1 |

| Reporter | 35 | 0 | 1 |
| --- | --- | --- | --- |
| Reporter | 45 | 0 | 1 |
| Reporter | 58 | 1 | 0 |
| Reporter | 66 | 1 | 0 |
| Reporter | 37 | 1 | 0 |
| Reporter | 29 | 1 | 0 |
| Reporter | 55 | 1 | 0 |
| Reporter | 34 | 1 | 0 |
| Reporter | 36 | 1 | 0 |
| Sports Writer (PT) | 21 | 0 | 1 |
| Sports Writer | 22 | 1 | 0 |
| Features Editor | 54 | 0 | 1 |

# Employee Data Form

Required of all new hires, rehires and transfers

**EXHIBIT B**


GateHouse Media

Publication or Entity: GateHouse Media Management

## EMPLOYEE INFORMATION

Employee Name: Barbara J. Augsdorfer
Address City/: 3 Lacie Ct
Town: Savannah   State: GA   Zip Code: 31419
County: Chatham   Phone Number: 951-522-0383
Personal Email: barbara.augsdorfer@gmail.com

Marital Status: Married [X]   Single [ ]
Date of Birth: [redacted]
Date of Hire: 01/27/2020
Social Security #: [redacted]
Gender: Female

## DISABILITY STATUS

Disabled:
Disability Type:

## VETS-100A

Military Discharge Date (if applicable):

## EDUCATION

Highest Education Level: master's (MBA)
Professional Credentials:
School Name: University of Phoenix
Major: Business Administration   Education Type: Post-grad   Graduated? Yes
Skills: Researching, interviewing, writing, editing, photography
Licenses and Certifications:
Languages: English
Read, Write, Speak: Read, write, speak
Proficiency: Fluent (Native)

## EMERGENCY CONTACT

Name: Mike Augsdorfer
Cell Number: 317-775-0559   Work Number:   Home Number:
Relationship: Husband

**General Deductions:**

General Deductions (if applicable/non-health & non-401K)

## EEO EMPLOYEE DATA FORM

GateHouse Media, Inc. is required to collect and report the following information to Federal and State agencies. **Responses to this section of the Employee Data form are completely voluntary and your answers (or your election to not answer) will not subject you to any adverse employment action.**

### ETHNICITY - *What is your ethnicity?*

☐ **Asian:** A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam.

☐ **American Indian or Alaska Native:** A person having origins in any of the original peoples of North and South America (including Central America), and who maintains a tribal affiliation or community attachment.

☐ **Black or African American:** A person having origins in any of the Black racial groups of Africa.

☒ **Hispanic or Latino:** A person of Cuban, Mexican, Puerto Rican, South or Central American or other Spanish culture or origin, regardless of race.

☐ **Native Hawaiian or Other Pacific Islander:** A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands.

☐ **Two or More Races:** (Not Hispanic or Latino) All persons who identify with more than one of the above five races

☐ **White:** A person having origins in any of the original peoples of Europe, the Middle East, or North Africa.

☐ **Decline to state**

*[Signature: Barbara J Augsdafer]* / 01/27/2020
Employee Signature / Date

This form is used to supplement payroll/status change form

Please note that drop-down menus have been added to assist in selecting the correct data based on the field noted in this form. These data elements may change periodically, however, the form may not have been updated due to the timing of change notifications. Please enter the correct data in all fields, even if the correct data element does not appear in the drop-down menu. You may enter it manually. Please notify corporatehr@gatehousemedia.com of missing data elements in order for this form to remain as current as possible. Thank you in advance for your cooperation.